*Northrup v. Metcalf.*

---

## G. H. & J. H. NORTHRUP *vs.* METCALF and others.

Where H. took a conveyance of the legal title to a farm, as the mere trustee for N., and as a security for a part of the purchase money advanced for N. upon the purchase of the lot, the whole of which advance was repaid by N.; *Held* that a judgment recovered against H. was primarily chargeable upon a mill lot which belonged to him, subsequent to the repayment of his advance to N.; although H. had afterwards sold the mill lot to another person, who had paid him for the same.

And an assignee of the judgment having agreed to discharge the premises, which were primarily liable for the payment of the judgment debt, with a full knowledge of the equitable right of the parties; *Held* further, that he could not be permitted to enforce the judgment against the farm of N.

Where a judgment at law is a lien upon two parcels of land of the judgment debtor, both of which parcels are subsequently conveyed to bona fide purchasers, who

Northrup v. Metcalf.

have no actual notice of the existence of the lien of the judgment, the one who first purchases and pays for his land has the prior equity to have the same released from the lien of the judgment; although by mistake the conveyance to him is not executed, so as to transfer the legal title from the judgment debtor, until after the conveyance of the other parcel of land to the second purchaser.

Where the equities of parties are equal, and neither has a strict legal right as against the lien of a judgment, the one whose equitable right first accrues is entitled to a preference in having his property discharged from such lien.

THIS was an appeal from a decree of the vice chancellor of the fifth circuit. The facts of the case, as established by the pleadings and proofs, were substantially as follows: In May, 1816, Christopher Northrup the elder, the father of the complainants, contracted with the executor of W. Cooper deceased, for the purchase of lot No. four of the subdivisions of great lot No 13 in the Wharton patent, in Otsego county, for the consideration of $860 and interest; and, upon the completion of the payment of the purchase money, the executor was to give a conveyance in fee simple of the premises. C. Northrup went immediately into possession of the lot, under this contract; and he made payments thereon, for principal and interest, to the amount of about $760, previous to the sale thereof under the decree of the court of chancery hereafter mentioned. The premises were afterwards advertised to be sold, upon a decree of the court of chancery against the heirs of W. Cooper; and C. Northrup employed W. Hall, his nephew, to attend the sale and bid in the premises for him. But for some reason which is not explained, Hall suffered the lot to be sold to another person, who subsequently transferred his bid to Geo. Clark. As the sale under the decree had been made subject to the right of C. Northrup under the contract, Clark, however, consented to sell and convey his interest in the lot, to C. Northrup, upon the payment of the balance due on such contract, with a trifling addition; amounting in all to about $400. W. Hall thereupon undertook to obtain the conveyance from Clark, and was furnished by C. Northrup with about $100 in money, and agreed himself to raise the residue of the fund, for that purpose. As C. Northrup did not wish to take the conveyance to himself immediately, but to have the land conveyed to himself, or his heirs, at a future

day, as he should afterwards direct, it was agreed that W. Hall should take the conveyance from Clark, in his own name, and should hold it as security for the moneys which should be advanced to Clark, by him, for C. Northrup; and that upon payment of such moneys he should convey the premises to the latter, or to his sons, as C. Northrup should thereafter direct. Hall thereupon, in February, 1824, raised the residue of the purchase money which was to be paid to Clark, and took a conveyance of the premises to himself, pursuant to his agreement with C. Northrup; which conveyance was duly recorded. In July, 1825, J. C. Morris recovered a judgment for about $400, besides costs, in the court of common pleas of Otsego county, against W. Hall and R. B. Carpenter, for a debt in which Carpenter was a mere surety for Hall. C. Northrup and his sons being ignorant of the existence of this judgment, afterwards paid to Hall the whole amount due him for advances on account of the purchase from Clark; which payment was completed previous to May, 1828. But as C. Northrup had not yet determined to whom he would have the land conveyed, Hall continued to retain the legal title to the same until after his purchase of the mill lot, and the re-conveyance thereof to R. Clark, as hereafter mentioned. On the 4th of October, 1828, Hall purchased of Luke Metcalf a mill and mill site, in the county of Otsego, and took a conveyance thereof to himself. A few days afterwards Hall conveyed the same to R. Clark in pursuance of a previous agreement between them. Clark being ignorant of the existence of the Morris judgment, which had become a lien upon the mill lot, through the conveyance from Metcalf to Hall, paid the whole of the purchase money for the mill and mill site to Hall; at the time he received the deed of the latter for the premises. In July, 1829, Hall, by the directions of C. Northrup, executed what was supposed and intended to be a conveyance of the farm, then in the possession of the latter, to his two sons, J. H. Northrup and C. Northrup the younger; and they gave a bond to their father to support him and their mother for life. But by mistake the deed was given for lot No. three instead of lot No. four. Before the discovery of the mistake the father and mother of the

grantees died, and C. Northrup the younger had sold out his interest in the premises to his brother, G. H. Northrup. In February, 1831, the mistake was corrected by Hall's giving a new deed to J. H. Northrup and G. H. Northrup, the present complainants, for lot No. four, which was the lot intended to be conveyed to them in 1829; and a re-conveyance, by a quit claim deed, was then executed to Hall for lot number three, which was described in the deed of 1829; which last mentioned deed had been recorded previous to the execution of the corrected conveyance. Subsequent to the execution and re-cording of the deed from Hall to the complainants, the Arkright Cotton Manufactory was incorporated, and became the owner of the mill and mill site, which was subject to the lien of the judgment to Morris. On the fourth of December, 1832, E. C. Williams, who was one of the stockholders in that corporation, took an assignment of the judgment from Morris, to be collected at his own risk and costs, but upon the condition that it should be collected out of the property of Hall, without resorting to that of Carpenter, the surety, unless sufficient property of Hall could not be found to satisfy the judgment, and the property of Hall, bound by the lien of the judgment, being first sold. And on the 28th of the same month, Williams sold the judgment to L. Metcalf, who was aware of the circumstances under which Hall had obtained the legal title to lot number four, and that the money advanced by him for C. Northrup the elder had been re-paid in full. But Metcalf took the assignment of the judgment subject to the condition that the judgment was to be made and collected out of the property of Hall, except the mill and mill site, deeded by Hall to R. Clark, and then owned by the Ark-right Cotton Manufactory; and without resorting to the property of Carpenter, the surety. Metcalf afterwards caused lot number four to be advertised and sold, upon an execution issued on that judgment, and became the purchaser thereof at the sheriff's sale, in February, 1835; although he had been notified by the complainants of their rights in the premises, and that the judg-ment was not in equity a lien thereon. At the expiration of the fifteen months allowed by law for redemption, he took a

conveyance from the sheriff, and subsequently commenced an action of ejectment, against one of the complainants who was in possession of the premises. After issue joined in that suit, L. Metcalf died, having by will devised a life estate in his real property to his wife, A. Metcalf, one of the defendants in this suit, and leaving the other two defendants, his sisters, his only heirs at law. They subsequently caused themselves to be substituted as plaintiffs in the ejectment suit, as such devisee and heirs at law of L. Metcalf. And the complainants thereupon filed their bill, in this cause, to restrain the defendants from proceeding in the ejectment suit, and to compel them to release to the complainants the legal title to the premises, which was acquired under the sheriff's deed. The cause was heard upon pleadings and proofs, and upon a stipulation that certain proceedings in another suit, before the vice chancellor of the sixth circuit, in which L. Metcalf was the complainant, and Hall and G. H. Northrup were defendants, should be received as evidence. The vice chancellor decided that the mill and mill site were primarily liable to satisfy the judgment, and that it was therefore inequitable to sell the lot of the complainants, to satisfy the amount due; the mill lot and mill site being more than sufficient for that purpose. He made a decree accordingly, from which decree the defendants appealed.

*H. Van Derlyn*, for the appellants. The judgment of Morris against Hall was a legal and equitable lien on the Northrup farm to the extent of the purchase money unpaid at the time of the docketing of the judgment; and the lien of the judgment was not impaired or affected by the subsequent payments made by the Northrups to Hall.

Equity does not consider the vendee of real estate as the owner, until the purchase money is actually paid. (1 *Story's Eq.* 78. *Bogert* v. *Perry*, 17 *John.* 355. *Finch* v. *Winchelsea*, 1 *P. Wms.* 277, 279, 282. 1 *Paige*, 128. *White* v. *Carpenter*, 2 *Id.* 218.) A judgment is, in equity, a lien only on the legal and equitable interest of the judgment debtor in his real estate. The judgment can attach only on his actual inter-

est in the land. (*Kiersted* v. *Avery*, 4 *Paige's Rep.* 9.) The judgment being merely a general lien on the land of the debtor, it is subject to every equity which existed against the land, in the hands of the judgment debtor, at the time of the docketing of the judgment. (*Arnold* v. *Patrick*, 6 *Paige*, 315.) Against the rights of Hall in the farm, at the time of the docketing of the judgment, the Northrups had no prior equity; but their equitable right was subject to the prior right of Hall, to the extent of the unpaid purchase money. The lien of the judgment on the Northrup farm was not discharged by the assignment of Williams, to Metcalf, which exempted the mill lot from the lien of the judgment. And neither Morris nor his assignees were bound to sell the mill lot, under the judgment, before resorting to the Northrup farm.

*R. Campbell,* for the respondent. Morris's judgment never was a lien, in equity, on the premises in question. Equity looks on things agreed to be done as actually done. Therefore where a contract is made for the sale of real estate, equity considers the vendor as a trustee for the purchaser of the estate sold, and the vendee as a trustee of the purchase money for the vendor. (*Sugden on Vendors*, 120, *ch.* 4, *old ed.*) A judgment against the vendor after the contract to sell, especially after the payment of the purchase money though before the conveyance, will not bind the land. (*Finch* v. *Winchelsea*, 1 *P. Wms.* 272. *In the matter of Howe*, 1 *Paige*, 125. *White* v. *Carpenter*, 2 *Id.* 217. *Kiersted* v. *Avery*, 4 *Id.* 9. *Arnold* v. *Patrick*, 6 *Id.* 315.) The equity of the Northrups arose at the time of the contract of sale. Where lands, which subject to the lien of a judgment, are sold by the judgment debtor, they are to be sold under the judgment in the inverse order of alienation. The first purchaser from the judgment debtor has the prior equity, although the consideration is not actually paid until after other portions of the lands have been purchased and paid for. (*Gouverneur* v. *Lynch*, 2 *Paige*, 300.) The possession of the Northrups was constructive notice of their equitable rights to Metcalf. The judgment, in the hands of Metcalf, was not even a lien to

the extent of the unpaid purchase money. If the owner of a judgment delays selling until the purchase money of land contracted to be sold by the judgment debtor is paid, he is without remedy. He must issue his execution, and stay the payment, and make the land responsible for the balance due by the vendee. The lien of the Morris judgment was discharged by the assignment of the judgment by Williams to Metcalf. That assignment released the mill lot, which was primarily liable, from the lien of the judgment. Metcalf, at the time he took the assignment, had constructive if not actual notice of the equity of the Northrups. (11 *Wend.* 447. 6 *Id.* 226. 2 *J. J. Marshall,* 180. 1 *John. Ch.* 83. 8 *Paige,* 285. 2 *Id.* 300.)

THE CHANCELLOR. The evidence in this case shows that Hall took the legal title to the Northrup lot as a mere trustee, and as a security, in the nature of a mortgage, for the amount of that portion of the purchase money which he advanced to G. Clark for C. Northrup the elder. It comes, therefore, directly within the decision of Chancellor Kent in the case of *Boyd* v. *McLean,* (1 *John. Ch. Rep.* 582.) There it was held that such a transaction created a resulting trust in favor of the person for whom the purchase was made; which trust might be established by parol evidence. It is not necessary to decide whether a judgment against the trustee is, in equity, a lien upon the premises, even to the extent of the moneys advanced for the benefit of the cestui que trust; so as to make it the duty of the cestui que trust to search the records, and ascertain whether any such judgments exists, before he pays over to the trustee the moneys borrowed of him. For the judgment in this case was unquestionably an equitable as well as a legal lien upon the mill lot, which was conveyed to Hall on the 4th of October, 1828; the value of which lot was more than sufficient to satisfy the judgment. And the evidence in the case establishes the fact, beyond all doubt, that the whole amount of the advances of Hall, for the benefit of C. Northrup the elder, had been re-paid some months previous to the conveyance of the mill lot to Hall. It is true Hall had contracted to sell the mill lot to R. Clark,

some four or five weeks before he purchased it of Metcalf. But no part of the purchase money was paid to him, by R. Clark the purchaser, until the execution of his deed of the 8th of October, 1828, when the judgment of Morris had become an equitable as well as a legal lien upon the mill lot in the hands of Hall.

Although the docketing of the judgment was constructive notice to subsequent purchasers from Hall, it is probable that neither R. Clark nor the Northrups were aware of its existence at the time they made their several payments to him. And in this respect, if the judgment was ever a lien, in equity, upon lot No. four, which was held in trust, the equities of the parties were equal. But the equity of C. Northrup, to a conveyance of his lot discharged of any claim on account of the judgment, was prior in point of time to the equity of R. Clark under his purchase. And the principle that as between equal equities he who is first in time is strongest in right, would of course, throw the charge of the judgment upon the land last purchased and paid for, upon which it was a lien. The result will be the same if we apply the doctrine of constructive notice to this case. For if the equitable owners of both parcels had constructive notice of the existence of the judgment, at the time they made their several payments to Hall, the possession of lot No. four by C. Northrup, at the time R. Clark purchased, was constructive notice of his right, in equity, to that lot discharged of the lien of the judgment: That is, it was sufficient to put a subsequent purchaser from Hall upon inquiry, whether the lot, for which he was about to pay his money, was not, in fact, primarily liable for the payment of the amount of the judgment; upon the equitable principle of charging the several parcels, sold by the judgment debtor, in the inverse order of alienation. And if such an inquiry had been made of the Northrups, at the time R. Clark paid his purchase money, he would have ascertained that the judgment of Morris was chargeable exclusively upon the mill lot, and upon the other property belonging to the judgment debtors at that time; and that in equity lot No. four was not subject to the lien of such judgment.

Morris, the original owner of the judgment, therefore, had no right to enforce the lien of that judgment, against the mere legal title of Hall in lot No. four, which title Hall held as a mere naked trustee for C. Northrup, subsequent to the 4th of October, 1828; and to exempt the mill lot and the property of Carpenter the surety, which was primarily liable. And the subsequent assignments certainly gave no greater rights in this respect, to L. Metcalf, than Morris himself had. The sale of lot No. four, under the execution, and the purchase thereof by Metcalf with full notice of all the facts upon which the equitable rights of these complainants to have that lot exonerated from the technical lien of the judgment was based, was therefore inequitable and unconscientious.

The decree appealed from is not erroneous, and it must be affirmed, with costs.